UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No.

BTG Patent Holdings, LLC, a
Nevada limited liability company,

    Plaintiff,

v.

Bag2Go, GmbH, a German
corporation, and Jan Reh, an individual,
Rimowa Distribution, Inc., a
Delaware corporation, Rimowa, Inc.,
a Delaware corporation,

    Defendants.
_____/

## COMPLAINT

Plaintiff, BTG Patent Holdings, LLC ("BTG" or "Plaintiff"), by and through its undersigned counsel, hereby sues Bag2Go, Gmbh ("Bag2Go"), Jan Reh ("Reh"), Rimowa Distribution, Inc. ("RD") and Rimowa, Inc. ("Rimowa US")(RD and Rimowa US are collectively referred to as "Rimowa"; Rimowa, Bag2Go and Reh are collectively referred to as "Defendants") and states:

### JURISDICTION AND VENUE

1.    This Court has jurisdiction over this action pursuant to 15 U.S.C. § 1121 (actions arising under the Lanham Act), 28 U.S.C. § 1338(a) (acts of Congress relating to trademarks), 28 U.S.C. § 1338(b) (pendant unfair competition claims) and 28 U.S.C. § 1367 (supplemental jurisdiction).

1

2.	Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to the claim occurred in this District and a Defendant maintains an office in this District.

## NATURE OF ACTION

3.	This is an action in law and equity for statutory trademark infringement, common law federal trademark infringement, common law trademark infringement, counterfeiting, false designation of origin and unfair competition in violation of Section 42 of the Lanham Act of 1946, as amended, 15 U.S.C. § 1051, *et seq*., and Florida State law.

## THE PARTIES

4.	Plaintiff, BTG, is a limited liability company organized and existing under the laws of the State of Nevada and has a principal address of 1750 Landing Strip Avenue, Las Vegas, Nevada 89119 and licenses operations in Nevada and Florida.

5.	Defendant, Bag2Go, is a corporation organized under the laws of the country of Germany with offices at Neuer Wall 10, 20354 Hamburg.  Bag2Go conducts business in Florida by directly marketing its goods into the State of Florida.

6.	Defendant, Reh, is upon information and belief an individual resident of Hamburg, Germany.  Upon information and belief Reh has, at all times relevant hereto, controlled the actions of corporate Defendant Bag2Go.

7.	Defendant RD is a corporation organized and existing under the laws of the State of Delaware.  RD is registered to do business in Florida and maintains offices at 115 NE 40th Street, Miami, FL 33137.  Its agent for service of process is Corporate Creations Network, Inc., 11380 Prosperity Farms Road #221e, Palm Beach Gardens, FL 33410

8.	Defendant Rimowa US is a corporation organized and existing under the laws of the State of Delaware with offices in Miami, Florida.  Its agent for service of process is

Corporate Creations Network, Inc., 3411 Silverside Rd., #104 Rodney Building, Wilmington, Delaware 19810.

**FACTS IN COMMON TO ALL COUNTS**

*a. BTG and its intellectual property.*

9. BTG is a corporation which owns and licenses unique and well known trademarks for luggage and travel related services.

10. BTG, directly or through its predecessor entities, has been in business since 1999.

11. BTG, through its licensees, maintains operations at major airports including McCarran International Airport and Fort Lauderdale-Hollywood International Airport.

12. BTG, through its licensees, has been operating at several hotels in Las Vegas, Nevada.

13. BTG, through its licensees, has also operated at ports having cruise ship operators such as the Port of Miami and Port Everglades.

14. BTG, through its licensees, also operates at malls located within the United States, such as Aventura Mall in Miami-Dade County and Sawgrass Mall in Broward County, Florida.

15. BTG, through its licensees, provides branded travel bags and an array of baggage handling services related to leisure and business travel.

16. BTG, through its licensees, is one of the few companies in the United States authorized by the Transportation Security Administration (TSA) to partner with airports to perform luggage storage and baggage delivery services, including the transportation of luggage from remote locations such as hotels and cruise ships to airports.

17. On or about at least as early as January 8, 1998, BTG, through its predecessor-in-interest and current CEO, Mr. Keith Wiater, commenced using BTG's Mark, **BAGS TO GO**, in

commerce in connection with luggage transportation services for others, namely, pick-up and delivery of luggage for airline industry.  ("Plaintiff's Mark" or "BTG's Mark")

18. BTG had registered many of these marks federally, directly and through its predecessor-in-interest, Mr. Keith Wiater.

19. These federal registrations include:

   a. U.S. Trademark Registration No. 2,928,928 for the trademark:

### BAGS TO GO

registered on March 1, 2005 in class 039 for "luggage transportation services for others, namely, pick up and delivery of luggage for airline industry and cruise ship operators."

   b. U.S. Trademark Registration No. 2,904,424 for the trademark:



registered on November 23, 2004, in class 39 for "[l]uggage transportation services for others, namely, pick up and delivery of luggage for the airline industry and cruise ship operators."

   c. U.S. Trademark Registration No. 3,638,458 for the trademark:



registered on June 16, 2009, in class 39 for "luggage transportation services for others, namely, pick up and delivery of luggage for airline industry and cruise ship operators."

4

("Plaintiff's Registrations")

20.  At least as early as May 31, 2011, BTG, through its licensees, also began selling travel bags branded BAGS TO GO.  The product has been a success and sales have expanded.

21.  As a result, BTG filed and is actively prosecuting federal application number 86389920 for the trademark BAGS TO GO, currently pending before the USPTO in class 18 for "All-purpose reusable carrying bags; Baggage tags; Carry-all bags; Carry-on bags; Flight bags; Luggage; Luggage tags; Reusable shopping bags; Roll bags; Shopping bags with wheels attached; Travel baggage; Travel bags; Wheeled shopping bags." ("Plaintiff's Application").

22.  BTG invests substantial funds to promote these marks

23.  BTG operates a web site at BAGSTOGO.com which promotes its services and Trademark.

24.  BTG also operates at "brick and mortar" physical locations in Nevada and Florida.

b. *Defendants' infringement.*

25.  Rimowa, a well-known luggage manufacturer, and Airbus, an international transportation corporation, issued a press release that they intended to jointly produce a luggage product under the trademark BAG2GO.

26.  On or about February of 2013, Rimowa, GmbH, Defendant Rimowa's European parent company, registered the domain BAG2GO.INFO and BAG2GO.AERO.  Shortly thereafter, Bag2Go began to advertise a luggage concept being developed jointly with Airbus, S.A.S, which would be a type of computerized luggage with GPS capability.

27.  On December 5, 2013, Airbus, S.A.S., filed a trademark application to register the mark BAG2GO ("Infringing Mark") in the United States.  The U.S. application is based on an

international registration, no. 1196750, with a date of December 5, 2013. The registration covers the Infringing Mark, as shown above, with the following identification of goods:

    a. Computer software for tracking, weighing, and handling baggage in International Class 9;

    b. Travelling bags namely, luggage that can be controlled by a smart phone and featuring electronic tagging for paperless airline check-ins and an integrated scale to measure its own weight in International Class 18; and

    c. Transportation services, namely, the checking of baggage in International Class 39.

28. On September 8, 2014, Bag2Go was created. The original CEO was Dieter Morszeck.

29. On December 10, 2014, BTG filed a trademark opposition against the U.S. trademark application for BAG2GO with the Trademark Trial and Appeal Board.

30. Subsequently, on February 4, 2015, defendant Reh was appointed CEO of Bag2Go. Upon information and belief, Reh has controlled and directed the infringing activities of Bag2Go at all times thereafter.

31. On March 15, 2015, Airbus, S.A.S., moved for a suspension of the opposition proceeding before the U.S. Patent & Trademark Office on the basis of settlement discussions with the consent of BTG, suggesting that it was engaged in settlement efforts with BTG.

32. These discussions included a face to face meeting between the CEO of BTG and Defendant Reh which occurred in early April 2015 in the U.S. During these discussions, Defendants offered no solution to the dispute over Bag2Go's intended use of its BAG2GO trademark but to coexist in the same market. BTG explained that coexistence was not an option since it would severely damage the goodwill in its trademark BAGS TO GO, because BAG2GO

and BAGS TO GO look and sound similar and BTG provides services that are nearly the same as Bag2Go's planned services, BTG sells travel related bags that target the same consumers and BTG also provides baggage tracking to its customers. Defendants indicated they would proceed with their intended use notwithstanding BTG's rights. The discussions continued by e-mail over the following weeks.

33. On May 28, 2015, Airbus, S.A.S. recorded an assignment of the application to Bag2Go.

34. On June 17, 2015, Bag2Go announced that it was "ready for the BAG2GO Launch."

35. On June 23, 2015, Defendant Reh e-mailed BTG and indicated that it would not settle on mutually agreeable terms.

36. BTG has used BTG's Mark, including the Federally Registered BAGS TO GO Trademark, extensively and continuously for many years before Bag2Go began marketing its upcoming products in connection with confusingly similar imitations of BTG's Mark.

37. Bag2Go's announcement of its imminent launch of an actual product bearing the infringing mark creates and urgent threat of irreparable harm to BTG and the goodwill in its mark.

38. Rimowa will be, upon information and belief, producing co-branded luggage with both the Rimowa and BAG2GO trademarks. RD will be distributing these products in the US.

39. Defendants' use of confusingly similar imitations of BTG's Mark is likely to deceive, confuse, and mislead prospective purchasers and purchasers into believing that the goods and services marketed, sold, distributed, and offered for sale by Defendants are produced by, authorized by, or in some manner associated with or sponsored by BTG, which they are not. The likelihood of confusion, mistake, and deception engendered by this wholesale and brazen

misappropriation of BTG's Mark has caused irreparable harm to the goodwill symbolized by BTG's Mark and the reputation for quality and excellence that it embodies, and that harm is ongoing.

40. The harm is particularly egregious since it exploits the needs of travelers sensitive to regulatory requirements and safety concerns. By engendering confusion and misinformation, Defendants undermines trust in the industry.

41. Purchasers, prospective purchasers and others viewing Defendants' confusingly similar imitations of BTG's Mark in connection with Defendants' goods are likely to mistakenly attribute the goods and services to BTG. These activities are therefore likely to cause confusion before, during, and after the time of purchase or use (or attempted purchase or use) of Defendants' goods and services. This is particularly damaging with respect to those persons who may perceive a defect or lack of quality in Defendants' reputation, products, or services. By causing such a likelihood of confusion, mistake, and deception, Defendants has inflicted irreparable harm to BTG's goodwill in BTG's Mark, and the reputation for quality and excellence that they embody, and that harm is ongoing.

42. Defendants are using confusingly similar imitations of BTG's Mark in connection with goods and services that are directly competitive with or related to BTG licensed goods and services or within BTG's natural zone of expansion.

43. Defendants' unauthorized use of BTG's Mark is commercial in nature and is intended to, and will, directly compete with the lawful publication, distribution and advertising commercial activities of BTG and its licensees to the detriment of BTG.

44. On information and belief, Defendants knowingly, willfully and intentionally adopted and used confusingly similar imitations of BTG's Mark to trade on the goodwill symbolized by BTG's Mark and the reputation for quality and excellence that it embodies.

45. Upon information and belief, Defendants willfully and deliberately employs BTG's Mark to mislead and confuse consumers that Defendants' goods and services are provided, sponsored, affiliated with, licensed or approved by BTG.  Defendants thus unfairly benefits from the goodwill and excellent reputation of BTG's Mark established by BTG throughout Florida, Nevada, the United States and internationally at great effort and expense.

46. Defendants have not now, and have never been, authorized by BTG to use BTG's Mark or any other colorable imitations of BTG's Mark in connection with any goods or services, nor has BTG consented to any such use.

47. Through Defendants' use of colorable imitations and counterfeit copies of BTG's Mark, BTG's goodwill has suffered irreparable harm, which harm will continue as long as Defendants' uses continue.

48. BTG needs an injunction to stop this infringement of its marks and to stop the misleading of the public.

49. BTG has been forced to retain counsel and incur legal fees and costs as a result of the actions of Defendants.

50. All conditions precedent to the filing of this lawsuit have been satisfied or waived.

## COUNT I

### DIRECT AND CONTRIBUTORY INFRINGEMENT
### OF FEDERALLY REGISTERED TRADEMARKS
### AGAINST ALL DEFENDANTS

51. Plaintiff readopts and re-alleges all the allegations contained in paragraphs 1 through 50.

52. This is a claim by Plaintiff for direct and contributory infringement and counterfeiting of federally registered trademarks arising under Section 32 of the Lanham Act, 15 U.S.C. § 1114.

53. Defendants' activities, as alleged, constitute direct and/or contributory infringement and counterfeiting of Plaintiff's Federally Registered BTG Trademark in violation of Section 32 of the Lanham Act, 15 U.S.C. § 1114, all to the substantial and irreparable injury of the public and of Plaintiff's business reputation and goodwill.

54. By such wrongful acts, Defendants have caused and, unless restrained by the Court, will continue to cause serious irreparable injury and damage to Plaintiff and to the goodwill associated with its registered Mark, including diversion of customers from them, lost sales and lost profits, and Defendants will be unjustly enriched.

55. Defendants' acts are willful, intentional and egregious and make this an exceptional case within the meaning of 15 U.S.C. § 1117(a).

## COUNT II

### DIRECT AND CONTRIBUTORY INFRINGEMENT
### OF COMMON LAW TRADEMARKS
### AGAINST ALL DEFENDANTS

56. Plaintiff readopts and re-alleges all the allegations contained in paragraphs 1 through 50.

57. This is a claim by Plaintiff for direct and contributory infringement and counterfeiting of Plaintiff's common law trademark.

58. Defendants' activities, as alleged, constitute direct and/or contributory infringement and counterfeiting of Plaintiff's trademarks in violation of Plaintiff's common law trademark rights, all to the substantial and irreparable injury of the public and of Plaintiff's business reputation and goodwill.

59. By such wrongful acts, Defendants have caused and, unless restrained by the Court, will continue to cause serious irreparable injury and damage to Plaintiff and to the goodwill associated with its registered mark, including diversion of customers from them, lost

sales and lost profits, and Defendants will be unjustly enriched. Plaintiff has no adequate remedy at law.

## COUNT III

### FEDERAL UNFAIR COMPETITION AND FALSE DESIGNATION OF ORIGIN AGAINST ALL DEFENDANTS

60. Plaintiff readopts and re-alleges all the allegations contained in paragraphs 1 through 50.

61. This is a claim by Plaintiff for trademark infringement and false designation of origin arising under Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

62. Defendants' activities, as alleged, constitute infringement and/or contributory infringement of Plaintiff's trademark, false designation of origin, false representation and false description, all to the substantial and irreparable injury of the public and of Plaintiff's business reputations and goodwill.

63. By such wrongful acts, Defendants have caused and, unless restrained by the Court, will continue to cause serious irreparable injury and damage to Plaintiff and to the goodwill associated with the Plaintiff's trademarks, including diversion of customers from Plaintiff, lost sales and lost profits, and Defendants will be unjustly enriched. Plaintiff has no adequate remedy at law.

64. Defendants' acts are willful, intentional and egregious and make this an exceptional case within the meaning of 15 U.S.C. § 1117(a).

## COUNT IV

### COMMON LAW UNFAIR COMPETITION
### AGAINST ALL DEFENDANTS

65. Plaintiff readopts and re-alleges all the allegations contained in paragraphs 1 through 50.

66. This is a claim for unfair competition arising under the common law of the State of Florida.

67. By its foregoing deceptive and/or fraudulent conduct creating a likelihood of confusion, Defendants have unfairly competed with Plaintiff and/or contributed to acts of unfair competition by other Defendants or third parties, all to the substantial and irreparable injury of the public and of Plaintiff's business reputations and goodwill.

68. By such wrongful acts, Defendants have caused and, unless restrained by the Court, will continue to cause serious irreparable injury and damage to Plaintiff and to the goodwill associated with the Plaintiff's trademarks, including diversion of customers from Plaintiff's lost sales and lost profits, and Defendants will be unjustly enriched. Plaintiff has no adequate remedy at law.

**WHEREFORE,** Plaintiff prays:

(1) That a preliminary and permanent injunction issue, pursuant to Section 42 of the Lanham Act, 15 U.S.C. §§ 1124 and 1125, and the equitable power of this Court to enforce the common law of the State of Florida, restraining Defendants, their agents, servants, partners, representatives, employees, successors and assigns, and all others in concert and privity with them from:

    (a) Directly or indirectly making any use and/or causing, aiding, abetting or contributing to the actions of others in using:

      i.      Any trademark owned or used by BTG, including their associated designs and trade dress if any; and

      ii.     Any advertisements or promotional materials or other items that are labeled with or contain trademarks, designs or trade dress prohibited in i. above; and

(b) Directly or indirectly infringing Plaintiff's trademarks and/or trade dress; and

(c) Directly or indirectly seeking to register trademarks and/or trade dress which are confusingly similar to Plaintiff's trademarks or trade dress; and

(d) Directly or indirectly seeking to register Internet domains which are confusingly similar to Plaintiff's trademarks; and

(e) Unfairly competing with Plaintiff; and

(f) Falsely claiming any affiliation with Plaintiff.

(2) That Defendants be required to account to Plaintiff for Defendants' profits and the actual damages suffered by Plaintiff as a result of Defendants' acts of infringement, false designation of origin, and unfair competition together with interest, that Plaintiff's recoveries be enhanced and/or trebled, and that prejudgment interest be awarded, pursuant to Section 43 of the Lanham Act, 15 U.S.C. §§ 1117 and 1125, and the common law of the State of Florida;

(3) That Defendants be required to pay statutory damages to Plaintiff pursuant to Section 35(c) of the Lanham Act, 15 U.S.C. § 1117(c);

(4) That Defendants be ordered to surrender for destruction all printed materials incorporating or imitating Plaintiff's trademarks and/or trade dress, pursuant to Sections 36 and 43 of the Lanham Act, 15. U.S.C. §§ 1118 and 1125, and the equitable power of this Court to enforce the common law of the State of Florida;

(5) That Defendants be required to remove all Internet web pages making use of BTG's Mark or creating any unjustified association to BTG and surrender all domains incorporating or imitating Plaintiff's trademarks, and/or trade dress, pursuant to Sections 36 and 43 of the Lanham Act, 15. U.S.C. §§ 1118 and 1125, and the equitable power of this Court to enforce the common law of the Florida;

(6) That Defendants be required to pay Plaintiff's attorneys' fees, together with costs of this suit, pursuant to Section 35 of the Lanham Act (15 U.S.C. § 1117); and

(8) For such other and further relief as may be just and equitable.

## DEMAND FOR TRIAL BY JURY

Plaintiff demands trial by jury for all issues so triable as a matter of law.

Dated: July 29, 2015.

        ESPINOSA | TRUEBA, P.L.

        By: ___s/William R. Trueba, Jr._____
            William R. Trueba, Jr.
            Florida Bar No. 117544
            wtrueba@etlaw.com
            Jorge Espinosa
            Florida Bar No. 779032
            Jespinosa@etlaw.com
            1428 Brickell Ave.
            Suite 100
            Miami, FL 33131
            Tel: 305-854-0900
            Fax: 855-854-0900

        *Counsel for Plaintiff*